IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | 8:08CR71 |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | REPORT AND |
| ) | |
| **ADOLFO BARRERA-GONZALEZ,** ) | RECOMMENDATION |
| ) | |
| **Defendant.** ) | |

This matter is before the court on the motion to suppress filed by defendant Adolfo Barrera-Gonzalez (Barrera-Gonzalez) (Filing No. 12). Barrera-Gonzalez is charged in the Indictment with the possession of a firearm while being illegally and unlawfully in the United States (Count I) in violation of 18 U.S.C. § 922(g)(5)(A) and a forfeiture count regarding the firearm (Count II) pursuant to 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c). Barrera-Gonzalez seeks to suppress evidence obtained by the Omaha Police Department (OPD) on December 16, 2007, in Omaha, Nebraska, following a traffic stop of a vehicle driven by Barrera-Gonzalez.

An evidentiary hearing was held on Barrera-Gonzalez's motion on April 9, 2008. Barrera-Gonzalez was present for the hearing along with his appointed counsel, Assistant Federal Public Defender Karen M. Shanahan. Laura Garcia-Hein, a certified interpreter in the Spanish language, served as the interpreter. The United States was represented by Assistant U.S. Attorney Michael D. Wellman. During the hearings, the court heard the testimony of OPD Officers Joseph Baudler (Officer Baudler) and Russell Petersen (Officer Petersen). The court also received into evidence a videotape of the traffic stop (Exhibit 101) and took judicial notice of Nebraska Statute § 60-6, 257 (Exhibit 1). A transcript of the hearing (TR.) was filed on April 23, 2008 (Filing No. 21).

**FINDINGS OF FACT**

At approximately 11:30 p.m. on the evening of December 16, 2007, Officers Baudler and Petersen were in uniform, in a marked OPD cruiser, and on routine patrol in the northeast precinct of Omaha (TR. 4). While northbound on Saddle Creek Road, Officers

Baudler and Petersen observed a northbound gold Pontiac which had darkly tinted windows in violation of the Nebraska statutes (TR. 5). The officers first saw the tinted windows while driving alongside the gold Pontiac. The officers then pulled in behind the gold Pontiac and activated the patrol car's emergency lights (TR. 5; Exhibit 101). The police cruiser was equipped with a videotape recorder and recorded the stop from the time the overhead lights were activated (TR. 23; Exhibit 101). The Pontiac pulled over and the stopped (TR. 5). Officer Baudler walked to the driver's side of the vehicle and spoke to the lone occupant, the driver, Barrera-Gonzalez (TR. 5). Barrera-Gonzalez identified himself as Francisco Temores and presented an expired insurance card in the name of Francisco Temores (TR. 5-6). Barrera-Gonzalez was having some difficulty with the English language and Barrera-Gonzalez spelled another name other than the name Barrera-Gonzalez provided to Officer Baudler (TR. 7). Officer Baudler asked Barrera-Gonzalez if he was legally present in the United States and Barrera-Gonzalez said he was not (TR. 7). Barrera-Gonzlez was arrested for driving a vehicle without insurance and for providing false information (TR. 8). Barrera-Gonzalez was removed from the car and searched (TR. 7). Barrera-Gonzalez had a bag of methamphetamine in his right pocket, and $600 in cash and a meth pipe in his left pocket (TR. 7). Officers Baudler and Petersen searched the car and found a magazine to a 40-caliber firearm between the driver's seat and the front console (TR. 8).

Officer Baudler read Barrera-Gonzalez his *Miranda* rights (TR. 9). Barrera-Gonzalez stated he understood the rights and agreed to talk with Officer Baudler (TR. 9). Officer Baudler asked Barrera-Gonzalez about the methamphetamine and the magazine the officers found (TR. 9). Barrera-Gonzalez said he was a user of methamphetamine and he found the magazine in a bag he had found on the interstate while changing a tire (TR. 10). Officer Baudler asked Barrera-Gonzalez where he lived, and after Barrera-Gonzalez told the officers, Officer Baudler asked if Barrera-Gonzalez would be willing to sign a permission to search his house (TR.10). When Barrera-Gonzalez said he would be willing to sign the permission to search, the officers transported Barrera-Gonzalez to his residence at 6022 North 40th Street in Omaha (TR. 10-11; 46).

Upon arrival at 6022 North 40th Street, the officers walked to the door and knocked (TR. 11). Maria Gonzalez opened the door and let the officers inside (TR. 11). Officer Baudler explained they had found a magazine on Barrera-Gonzalez and asked if there was a gun that went with the magazine (TR. 12). Maria Gonzalez stated they had given a gun to a friend because they had kids in the house and did not want to keep a gun in the house (TR. 12). The officers asked for permission to search the house and Maria Gonzalez said they could (TR. 12; 48). The officers conducted a search and found a 40-caliber Springfield pistol on a bathroom shelf on the main floor (TR. 13). After finding the gun, Maria Gonzalez was asked to sign a permission to search form and asked if she was in the United States legally (TR. 14). Maria Gonzalez declined to sign a permission to search form (TR. 15). Earlier, documents were found in the residence in the name of Adolfo Barrera, and Barrera-Gonzalez denied he was Adolfo Barrera (TR. 13). However, Barrera-Gonzalez's identity was confirmed later through a fingerprint comparison by ICE (TR. 14).

The tint on the window Pontiac driven by Barrera-Gonzalez was tested with an OPD tint meter and tested at 12.9 percent, that is the tinting allowed only 12.9 percent light transmission through the window (TR. 16). The Nebraska statute requires light transmission at a minimum of 35 percent for the side windows and 20 percent for the rear window (TR. 16; Exhibit 1).

## LEGAL ANALYSIS

While on routine patrol, Officers Baudler and Petersen observed a vehicle with windows which appeared to be in violation of state traffic laws because they were overly tinted. The court credits the testimony of Officers Baudler and Petersen regarding the violation. Their observation is further buttressed by the result of the tint meter test applied to the windows of Barrera-Gonzalez's vehicle. Such activity constituted a traffic violation. **See** Neb. Rev. Stat. §60-6, 257(1)(c). "[A] police officer who personally observes a traffic violation has probable cause to stop the vehicle." ***United States v. $404,905.00 in U.S. Currency,*** 182 F.3d 643, 646 (8th Cir. 1999) (**citing *Pennsylvania v. Mimms***, 434 U.S. 106, 109 (1977)).

Once stopped, Officer Baudler determined Barrera-Gonzalez was driving with an expired insurance card and had given a false name to the officers. Whether probable cause existed for an arrest must be determined at the time of the arrest. "Probable cause exists if the totality of the circumstances known to all officers involved at the time of the arrest 'were sufficient to warrant a prudent person's belief that the suspect had committed or was committing an offense.'" **United States v. Mendoza**, 421 F.3d 663, 667 (8th Cir. 2005) (**quoting United States v. Cabrera-Reynoso**, 195 F.3d 1029, 1031 (8th Cir. 1999) (citation and internal quotations omitted) and **citing United States v. Amaya**, 52 F.3d 172, 174 (8th Cir. 1995) (totality of the circumstances)). The court finds Officer Baudler had probable cause to arrest Barrera-Gonzalez.

"The arrest itself justified the search of [the defendant's] person . . . and of the passenger compartment of his automobile." **United States v. Dawdy**, 46 F.3d 1427, 1430 (8th Cir. 1995) (citations omitted). Further, "[t]he law is clear that officers may search the passenger compartment of an automobile and examine the contents of any containers found within the passenger compartment when they have made a lawful custodial arrest of the occupant of an automobile." **United States v. Williams**, 165 F.3d 1193, 1195 (8th Cir. 1999) (**citing New York v. Belton**, 453 U.S. 454 (1981)). Drugs were found on the person of Barrera-Gonzalez, and the officers found a magazine for a weapon in the passenger compartment of Barrera-Gonzalez's vehicle. Such discoveries prompted further inquiry by the officers.

After Barrera-Gonzalez was placed in the police cruiser, he was advised of his rights pursuant to **Miranda v. Arizona**, 384 U.S. 436 (1966). While there was some testimony that Barrera-Gonzalez had some difficulty with the English language in spelling the name he had given Officer Baudler, there was no other evidence that Barrera-Gonzalez did not understand the **Miranda** warnings given him by Officer Baudler. The court finds Barrera-Gonzalez's statements were voluntarily made and not the product of an illegal police action. Barrera-Gonzalez gave the officers permission to go to his residence at 6022 North 40th Street and search his residence. Although Barrera-Gonzalez stated he would sign a permission to search form, the form was never completed in the police cruiser or at the

residence. The officers drove to Barrera-Gonzalez's residence and were admitted by Maria Gonzalez. Maria Gonzalez also consented to search of the residence.

"A consensual search does not violate the Fourth Amendment if the consent was voluntarily given without coercion." ***United States v. Thompson***, 403 F,3d 533, 537 (8th Cir. 2005) (internal citations omitted). The Fourth Amendment test for valid consent to search is that the consent be voluntary, and such "[v]oluntariness is a question of fact to be determined from all the circumstances." ***Ohio v. Robinette,*** 519 U.S. 33, 40 (1996). In applying the factors set forth in ***United States v. Hathcock***, 103 F.3d 715, 719-20, the court finds the consents of Barrera-Gonzalez and Maria Gonzalez were voluntarily made.

While acting under the consents to search the residence, the officers found the firearm in issue in the bathroom. Following the finding of the firearm and other items, Maria Gonzalez was asked to sign a permission to search form. She declined. Such declination will be considered as a withdrawal of her consent. ***United States v. Ross***, 263 F.3d 844, 846 (8th Cir. 2001). However, nothing was discovered following the withdrawal of the consent to search.

The court finds Barrera-Gonzalez's motion to suppress is without merit and should be denied in its entirety.

**IT IS RECOMMENDED TO JUDGE LAURIE SMITH CAMP that:**

Barrera-Gonzalez's motion to suppress (Filing No. 12) be denied.

**ADMONITION**

Pursuant to NECrimR 57.3 any objection to this Report and Recommendation shall be filed with the Clerk of the Court within ten (10) business days after being served with a copy of this Report and Recommendation. Failure to timely object may constitute a waiver of any objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

DATED this 21st day of May, 2008.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge